IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| **PIP HENG, et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 7:08-CV-5 (HL) |
| | : | |
| | : | |
| **COMMISSIONER JAMES DONALD,** | : | |
| **et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

Currently pending before the Court is the Recommendation of United States Magistrate Judge G. Mallon Faircloth, entered on December 30, 2009 (Doc. 62), in which he recommends that Plaintiffs' Motion for Class Certification be denied. Plaintiffs have filed an objection to the Recommendation (Doc. 63). After de novo consideration of the portions of the Recommendation to which objection is made, the Court accepts the Recommendation and denies Plaintiffs' Motion for Class Certification (Doc. 40).

**A.   BACKGROUND**

Plaintiffs allege that they were beaten while incarcerated at Valdosta State Prison ("VSP") and that the beatings were covered up. In their initial complaint, Plaintiffs sought declaratory and injunctive relief, as well as monetary damages. In an order entered on March 25, 2009 (Doc. 42), however, the Court adopted Magistrate Judge Richard L. Hodge's recommendation that the motion to dismiss filed by

Defendants as to Plaintiffs' prayers for injunctive relief be granted. Thus, the only claims for relief remaining are claims for compensatory and punitive damages.[1]

This case has a long and tortuous procedural history. Numerous parties have been dismissed and added. Presently, the Plaintiffs in the case are Pip Heng, Ronny N. Askew, Ellis Keel, Michael A. Walker, George C. Haskell, Andrew Hart, and Joseph Alan Greene.[2] The current Defendants are James Donald, Rick Jacobs, Sarah Draper, Sharon Lewis, Warden Hart, Deputy Warden McLaughlin, Albert Jones, Lt. Maine, Officer Powers, Officer Howell, Officer Brown, Officer Yancey, Officer Cannon, Officer Schnake, Officer Smith, Officer Ratliff, Officer Lucas, Officer Proctor, Officer Glynn, Officer Jackson, Officer Williams, Lt. Wadell, and Lt. Riddall.[3] According to the case docket, service has not been perfected on Officer Lucas, Officer Proctor, Officer Glynn, Officer Jackson, Officer Williams, Lt. Wadell, or Lt. Riddall, the new defendants named in Plaintiffs' second amended complaint.[4]

---

[1] Plaintiffs filed a second amended complaint on January 20, 2010 which requests the same injunctive relief previously addressed by Defendants' motion to dismiss. The injunctive relief claims still fail for the reasons set forth in the March 25, 2009 Recommendation, which was adopted by the Court.

[2] Astaniel Jarvis Mann, Elijah Adcock, Rickie Lee Fox, Daniel Fincher, and Shedrick D. Ross were dismissed as plaintiffs on Defendants' motion to dismiss (Doc. 33, adopted at Doc. 42).

[3] Captain Morris, Officer Sain, Officer Grainger, Sergeant Bond, Officer Page, Officer Daniel, Officer Bates, Officer John Doe No. 1, and Officer John Doe No. 2 were dismissed as defendants on Defendants' motion to dismiss (Doc. 33, adopted at Doc. 42).

[4] In the second amended complaint, Plaintiffs list Officer Powell, Officer Snake, and Officer Radcliff as Defendants. As previously established through the numerous filings in this case, the correct names for these officers are Powers, Schnake, and Ratliff. Counsel for Plaintiffs is directed to correct the case caption and all future pleadings.

B.  **PLAINTIFFS' ALLEGATIONS AND PROPOSED CLASS**

Plaintiffs allege that there is a pattern and practice of beatings by CERT Team officers at VSP and other Georgia prisons. According to Plaintiffs, CERT Team officers "deal out premeditated violence as a form of institutional control and physically beat restrained inmates as summary punishment." (Doc. 1, p. 21; Doc. 64, p. 21). Plaintiffs allege that the Defendant CERT Team officers and Defendant Maine have engaged in a pattern and practice of beating inmates at VSP, and that Defendants Hart and McLaughlin have condoned and been deliberately indifferent to the beatings. While Plaintiffs also make excessive force allegations against certain correctional officers employed at VSP, they interestingly never allege in their latest complaint that the correctional officers engaged in the pattern and practice of beating inmates. Finally, Plaintiffs allege that Defendants Donald, Jacobs, Draper, Jones, and Lewis have been deliberately indifferent to the beatings at VSP and other prisons and have worked to cover up the beatings.

Plaintiffs seek to represent a Rule 23 class that they describe as:

> All past and present inmates at the Valdosta State Prison and at other Georgia prisons who have been subjected to or may be subjected to excessive force, summary punishment, or premeditated violence by being beaten while restrained by CERT Team Officers at Valdosta State Prison and by CERT Team Officers at other Georgia prisons in violation of the

---

**The Clerk is also directed to correct the names of these Defendants on the docket to reflect their correct names.**

Finally, counsel for Defendants are directed to provide the Court with each Defendant's full name as part of their next filing.

> United States Constitution, laws and treaties, and the Georgia Constitution and laws.

(Doc. 40-2, pp. 2-3).

A short review of the Plaintiffs' individual allegations is in order. Plaintiff Heng alleges that Defendants Ratliff, Cannon, Yancey, Powers, Brown, Howell, and Smith kicked, beat, and choked him in the shower area at VSP while he was handcuffed. He also contends that Defendant Cannon told the nurse on duty in medical not to write down Plaintiff Heng's injuries so as to cover up the beating, and that he was put into isolation without medical attention and was prevented from using the telephone. Plaintiff Heng alleges that the actions of the named Defendant CERT Team officers were condoned by Defendants Maine, Hart, and McLaughlin. Plaintiff Heng alleges that he suffered rib and chest, neck, head and other injuries, including trunk and upper back bruises and abrasions, and swollen black eyes because of Defendants' actions. He also claims to suffer from continued physical injuries, pain, mental anguish, and post-traumatic stress.

Plaintiff Askew alleges that he was taken to the shower area of the lockdown unit at VSP and punched, kicked, and stomped in the face, head, and body while restrained. While Plaintiff Askew states that he was beaten by "Defendant CERT Team Officers," he does not identify which CERT Team officers participated in the alleged beating. Plaintiff Askew alleges that the actions of the unnamed Defendant CERT Team officers were condoned by Defendants Maine, Hart, and McLaughlin. He alleges that he suffered and is still suffering from injuries from the beating, and that he

continues to suffer mental anguish, chronic injuries, headaches, neck pain, and back pain.

Plaintiff Keel alleges that after he attempted to hide under his bed from Defendants Maine, Powers, Howell, and Smith, who entered his cell because he was kicking his cell door in order to get medical attention, one of the CERT Team officers grabbed his leg and pulled him from under the bunk. Plaintiff Keel alleges that Defendant Maine sat on his upper thighs, Defendant Howell twisted his arm, and Officer Powers kicked and stomped his back and side. He further alleges that Defendant Smith placed his knee into Plaintiff Keel's neck while the other CERT Team officers assaulted him, and that he was punched in the stomach several times. Plaintiff Keel states that he was threatened by Defendant Smith not to tell the nurse what happened, and was further threatened by Defendants Smith and Maine. Plaintiff Keel states that the alleged beating resulted in multiple bruises, contusions, and a broken rib. These alleged events took place at VSP.

Plaintiff Walker alleges that while he was at VSP, he was assaulted by Defendants Maine, Ratliff, Howell, and Brown. He alleges that Defendant Maine grabbed him by the throat and choked him and slammed his head against a window, that Defendant Ratliff and Howell slammed him to the floor, Defendant Brown hit him in the head with a baton after he was chained, and that while Defendants Maine and Howell held his legs, Defendant Ratliff punched him in the face and then Defendant

Maine hit him on the head with a walkie-talkie until he passed out. Plaintiff Walker alleges that he had a cut on his head that required twenty-two staples to close.

Plaintiff Haskell alleges that he was beaten at VSP on three separate occasions. First, he claims that while handcuffed, Defendant Riddall knocked him to the ground, sat on him, and slammed his head into the sidewalk. Next, Plaintiff Haskell alleges that while walking to his dorm, he was beaten by two unnamed CERT Team officers, who subsequently handcuffed him and took him to segregation where they slammed his head into the wall. Finally, Plaintiff Haskell alleges that while he was asleep, three unnamed CERT Team officers entered his room, picked him up, removed him from his room, ran his head into a gate, and took him to the shower area and choked him until he blacked out.

Plaintiff Hart alleges that Defendants Proctor and Lucas took him to a sally port at VSP, where they pushed him to the floor and beat him in the head with their walkie-talkies. Plaintiff Hart contends that he was restrained and escorted to the J-2 shower area, where Defendants Wadell, Glynn, Jackson, Lucas, and Proctor then allegedly repeatedly punched and kicked Plaintiff Hart's body, face, and back.

Plaintiff Greene alleges that he was escorted to a VSP shower by Defendant Williams while handcuffed. He contends that Defendant Williams pushed him into the wall and struck Plaintiff Greene with his fist in the back of Plaintiff Greene's head. The blow allegedly caused Plaintiff Greene's forehead to slam into the wall, causing him to become dizzy and nauseated.

**C.     ANALYSIS**

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081, 125 S.Ct. 877 (2005). Rule 23(a) requires a showing that the class is so numerous that joinder is impracticable, common questions of law or fact predominate, typicality in the claims or defenses, and fair and adequate representation. Fed. R. Civ. P. 23(a).

Magistrate Judge Faircloth found that Plaintiffs did not have standing to obtain injunctive relief. As previously noted, however, Plaintiffs' claim for injunctive relief was previously dismissed, so no further discussion regarding the standing issue is necessary.

The Magistrate Judge then determined that Plaintiffs did not meet any of the Rule 23(a) requirements. The Court agrees that Plaintiffs do not meet the commonality and typicality requirements.[5]

---

[5] To qualify for class certification, all four Rule 23(a) requirements must be met. As Plaintiffs have not met two of the Rule 23(a) requirements, it is not necessary for the Court to address the numerosity or fair and adequate representation requirements. The Court will state, however, that it doubts proposed class counsel has the ability to handle the claims of the proposed class. Proposed class counsel's position is not helped by the fact that he has yet to identify any of the class actions he has supposedly litigated successfully, and that he continues to claim that he has litigated over fifty excessive force cases successfully, even though the results of those cases as shown on the dockets of the district courts in this state clearly contradict that assertion.

"[T]he commonality requirement measures the extent to which all members of a putative class have similar claims." Cooper v. S. Co., 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds by* Ash v. Tyson Foods, Inc., 546 U.S. 454, 126 S.Ct. 1195 (2006)). The commonality requirement requires that a class action involve issues that are susceptible to class-wide proof. Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Plaintiffs contend in their objection that they share a common question of law and fact in that all have been and are continuing to be subjected to beatings while restrained at VSP and other Georgia prisons, and that they were unconstitutionally required to be incarcerated in inhumane conditions and were unconstitutionally subjected to beatings at VSP and other Georgia prisons where the beatings were sought to be covered up. They also argue that their allegation challenging Defendants' action in "issuing system wide beating gloves used for beatings of inmates and a system wide policy of covering up the unconstitutional beatings" provides commonality. (Doc. 63, pp. 15-16).

"Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1287 (11th Cir. 2001). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." Murray, 244 F.3d at 811 (citation omitted). Plaintiffs state in their objection that as with the commonality requirement, their allegation about Defendants' action in issuing system-wide beating gloves for the beating of inmates

and having a policy of covering up the beatings satisfies the typicality requirement. (Doc. 63, pp. 15-16).

It is worth noting that the arguments about commonality and typicality set forth in Plaintiffs' objection are the exact same arguments they made in their motion to certify class, down to the same missing punctuation and misspellings. The Court suspects that Plaintiffs' counsel simply copied these two sections from his original motion and pasted them into the objection. He does not provide any argument or state the grounds upon which he contends the Magistrate Judge erred.

In any event, the Court agrees with the Magistrate Judge that the commonality and typicality requirements cannot be met here. An Eighth Amendment excessive use of force claim requires a very fact-intensive analysis. Whether the use of force violates an inmate's constitutional rights "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (internal quotation marks and citation omitted). Under this standard, the court must look at "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085 (1986) (citation omitted). Also relevant are such factors as "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Id. Further,

the court must give a "wide range of deference to prison officials acting to preserve discipline and security," including when considering "[d]ecisions made at the scene of a disturbance." Cockrell, 510 F.3d at 1311 (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)). There are also individual defenses that the court must consider on a case-by-case basis, such as qualified immunity and vicarious or supervisory liability.

Excessive use of force claims do not lend themselves to class actions. The Eleventh Circuit has specifically held that excessive force actions "are especially unsuited to class disposition." Kerr v. City of West Palm Beach, 875 F.2d 1546, 1557-58 (11th Cir. 1989). Plaintiffs' claims arise from individual discrete acts of alleged misconduct. Eighth Amendment law requires the separate examination of the facts of each class member's claim, along with an individualized determination of liability. In addition, a separate damages trial will be required for every class member. Class certification in this case will not serve to promote judicial economy or efficiency. The Court finds that class certification is not proper.

### D. CONCLUSION

The Recommendation (Doc. 62) is adopted and made the order of this Court.[6] Plaintiffs' objection is overruled. Plaintiffs' Motion for Class Certification (Doc. 40) is denied.

---

[6] A court may hold an evidentiary hearing prior to granting or denying a motion for class certification, but one is not required. See Grayson v. K Mart Corp., 79 F.3d 1086, 1099 (11th Cir. 1996). The Court does not believe a hearing is necessary in this case.

**SO ORDERED**, this the 2nd day of February, 2010.

*s/ Hugh Lawson*

**HUGH LAWSON, SENIOR JUDGE**

mbh