**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA  DIVISION**

PIP HENG, et al.,                                :
                                                 :
              Plaintiffs,                         :
                                                 :
VS.                                              :         Civil File Case No.
                                                 :         7 : 08-CV-5 (HL)
COMMISSIONER JAMES DONALD, et al.,               :
                                                 :
              Defendants.                         :

_____

**<u>RECOMMENDATION</u>**

Presently pending in this 42 U.S.C. § 1983 action are three Motions to Dismiss filed by

Defendants.

This Complaint was originally filed on January 8, 2008 (Doc. 1) by multiple Plaintiffs who are

all represented by counsel. On March 10, 2008, the Defendants filed a pre-answer Motion to Dismiss

on several grounds. (Doc. 18).  On February 24, 2009, the magistrate judge to whom the case was

assigned recommended that the Motion to Dismiss be granted in part and denied in part.  (Doc. 33).

On July 24, 2008, counsel for Plaintiffs filed a motion (Doc. 27) in which he sought to add

as additional Plaintiffs Ellis Keel, Michael A. Walker, George C. Haskell, Jr., Andrew Hart, and

Joseph Alan Greene. That same motion also sought to add as additional defendants, Officers

Lucas, Proctor, Glynn, Williams, and Jackson along with Lt. Wadell and  Lt. Riddall.  All of the

'new' Plaintiffs are or were inmates at Valdosta State Prison who allege that they were summarily

beaten for no reason by varying combinations of the Defendants.  All of the 'new' Defendants are

or were employed at Valdosta State Prison.  The Motion to Join was granted on March 25, 2009.

(Doc.  43).  All parties acknowledged that under Federal Rule 15(a) Plaintiffs had a right to amend

their Complaint once as a matter of right since no Answer had yet been filed and that a pre-answer

Motion to Dismiss is not a responsive pleading for Rule 15(a) purposes. *Williams v. Board of Regents of the Univ. System of Georgia*, 477 F.3d 1282, 1291 (11th Cir. 2007)(Doc. 30). Defendants did not, however, waive any defenses.

Plaintiffs filed their second Amended Complaint (adding Plaintiffs Keel, Walker, Haskell, Hart, and Greene) on January 20, 2010. Defendants have now filed respective Motions to Dismiss Plaintiffs' second Amended Complaint.[1] Plaintiff's first Amended Complaint was presented by Consent Motion, which was subsequently denied with instructions to re-file. (Docs. 60, 61).

### *Summary of Plaintiff's Claims*

#### *Plaintiff Heng*

Plaintiff Heng[2] alleges that he was beaten while restrained by Defendants Powers, Howell, Brown, Yancy, Cannon, Smith, and Ratliff on May 29, 2007, in the ID shower area following his orientation at VSP. (Doc. 64, ¶¶ 9-14). Plaintiff further claims that he was taken to the medical unit for treatment, but Defendant Cannon instructed the nurse not to document Plaintiff's injuries and he was placed in lockdown and did not receive medical attention or access to a telephone. (Id.)

#### *Plaintiff Askew*

Plaintiff Askew[3] claims that he was beaten while restrained by Defendants Powers, Howell,

---

[1]Because the arguments made by all the Defendants are of a similar nature, the undersigned will examine the issues relative to each Plaintiff, as opposed to each motion. In the Motion to Dismiss filed on March 18, 2010 (Doc. 71), the Defendants note that as to the Defendant identified as "Lt. Waddell", "no known person" fitting this designation is employed at VSP. The Court notes that no Answer or Motion to Dismiss has been filed on behalf of Defendant Waddell.

[2]Plaintiff Heng is an original Plaintiff.

[3]Plaintiff Askew is an original Plaintiff.

Brown, Yancy, Cannon, and Schnake on March 12, 2007, in the shower of the lockdown unit at VSP. (Doc. 64, ¶¶ 15-19). After the alleged beating, Askew contends that he was transported to Lowndes State Prison where he was allegedly denied medical attention. (Id.)

*Plaintiff Keel*

Plaintiff Keel claims that he was beaten by Defendants Maine, Powers, Howell, and Smith on August 2, 2006, in his cell. (Doc. 64, ¶¶ 20-21). Keel further alleges that because Defendant Smith threatened him not to tell the nurse about the alleged beating, he refused medical attention. (Id., ¶ 22). Keel avers that Defendant Smith then told him that if he told anybody about the alleged beating, "they would be back." (Id.) Keel contends that Defendants Smith and Maine made two additional unspecified verbal threats to him in the days following the alleged incident. (Id.)

*Plaintiff Walker*

Plaintiff Walker alleges that he was beaten by Defendants Maine, Ratliff, Howell, and Brown on May 14, 2007, in the ID room at VSP. (Doc. 64, ¶¶ 24-27). Plaintiff alleges that he received medical treatment and was transferred to another facility. (Id., ¶¶ 28-29).

*Plaintiff Haskell*

Plaintiff Haskell claims that he was beaten on three separate occasions at VSP at the "instigation" of Defendant Ridall. (Doc. 64, ¶ 31). Haskell first alleges that he was beaten by two unidentified officers on December 8, 2006, in his cell and also in the shower of the segregation area. (Id., ¶ 36). Haskell next contends that he was beaten by two unidentified officers while walking to his dormitory on January 10, 2008. (Id., ¶ 35). Haskell submits that the unidentified officers then restrained him and took him to segregation where his head was purportedly slammed into a wall. (Id.) Finally, Haskell alleges that he was beaten while restrained by Defendant Ridall on the sidewalk outside of a prison building on March 5, 2008. (Id., ¶ 32).

*Plaintiff Hart*

Plaintiff Hart claims that he was beaten while restrained by Defendants Lucas, Proctor, Glenn, Jackson, and "Officer Waddell" in the sally port of his dormitory and in the shower area of a different building at VSP on June 26, 2007.  (Doc. 64, ¶¶ 38-39). Hart alleges that he was then seen by a nurse who stated that nothing was wrong with him. (Id., ¶ 40).

*Plaintiff Greene*

Plaintiff Greene alleges that he was beaten while restrained by Defendant Williams in the shower at VSP on November 14, 2007. (Doc. 64, ¶¶ 42-43). Greene further submits that Defendant Williams refused to provide Plaintiff with medical attention. (Id., ¶ 43).

**Motion to Dismiss (Doc. 71)**

Defendants James Donald, Rick Jacobs, Sarah Draper, Dr. Sharon Lewis, J. Darrell Hart, Gregory McLaughlin, Albert Jones, Sherman Maine, Jamie Powers, Jessie Howell, Terry Brown, Andre Yancy, Jack Cannon[4], Joseph Schnake, Marvin Lucas, Louise Proctor, Douglass Ridall, Michael Glenn, Shanton Jackson, and Byron Williams have filed this Motion to Dismiss the Second Amended Complaint (Doc. 64) and dismiss the claims of the five new Plaintiffs against all of these Defendants.

**Motion to Dismiss (Doc. 73)**

Defendant Officer Ratliff (erroneously identified as Radcliff in the complaints and other filings) moves to dismiss the Complaint.  Only two of the named Plaintiffs assert claims against Ratliff.  Plaintiff Heng alleges that he was beaten while restrained by several named Defendants, including Ratliff, on May 29, 2007, in the ID shower area following his orientation at VSP. Plaintiff

---

[4]A notice of death as to Defendant Jack Cannon was filed on March 22, 2010 pursuant to Rule 25(a) of the Federal Rules of Civil Procedure.  (Doc. 72).

Walker alleges that he was beaten by various named Defendants, including Ratliff, on May 14, 2007, in the ID room at VSP.

***Motion to Dismiss (Doc. 74)***

Defendant Rodney Smith files this Motion to Dismiss the Complaint and all allegations against him. Only two Plaintiffs allege constitutional violations against this Defendant. Specifically, Plaintiffs Pip Heng and Ellis Keel claim to have been subjected to excessive force by Defendant Smith in unrelated incidents while they were incarcerated at Valdosta State Prison ("VSP").

Plaintiff Heng alleges that on May 29, 2007, Defendant Smith, along with other Defendants, subjected him to excessive force following his orientation at VSP. (Doc. 64, ¶¶ 9-14). Plaintiff Keel claims that on August 2, 2006, he too was subjected to excessive force by Defendant Smith and other Defendants at VSP. (Doc. 64, ¶¶ 20-22).

***Failure to Exhaust Administrative Remedies***

Defendants move to dismiss the Amended Complaint because the new Plaintiffs failed to exhaust the administrative remedies available to them. A Complaint is subject to dismissal under Fed.R.Civ.P. 12(b) if an inmate has failed to exhaust his administrative remedies, see *Bryant v. Rich*, 530 F.3d 1368, 1374-76 (11th Cir. 2008).

The PLRA requires inmates to exhaust their administrative remedies prior to filing a lawsuit. Pursuant to Congress' constitutional authority, the PLRA mandates that:

> No action shall be brought with respect to prison conditions under Section 1979 of the revised statutes of the United States, 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement "allows prison officials an opportunity to resolve

disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204, 127 S. Ct. 910, 914, 166 L.Ed.2d 798 (2007). Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S. Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). Because proper exhaustion is required under the PLRA, unexhausted claims cannot be brought in federal court. *Id*. at 84-85, 126 S. Ct. at 2382-83.

In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. *Id*. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, then the complaint must be dismissed. *Id*. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. *Id.* Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues … ." *Id*. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See *Bryant*, 530 F.3d at 1376-77.

Defendants have submitted evidence showing that the Georgia Department of Corrections (GDOC) maintains a grievance procedure that is subject to explicit guidelines and available to all inmates. (Affidavit of Artis Singleton, Doc. 71 Exhibit A, ¶ 7). Notably, GDOC procedures do not contain any provision allowing inmates to bypass the grievance process outlined in SOP IIB05-0001. (Id., ¶ 25). Upon entering the GDOC, inmates are advised of the grievance process and provided an

inmate handbook, which includes instructions about filing grievances. (Id., ¶ 8). In addition, the grievance policy is available for review in the reference library. (Id.)

Exhaustion of the GDOC grievance procedure requires a three-step filing process: filing of an informal grievance, a formal grievance, and an appeal. (Id., ¶ 9). Inmates are required to file an informal grievance no later than 10 days from the date the offender knew, or should have known, of the facts giving rise to the grievance. (Id., ¶ 11). Informal grievances filed beyond the 10-day time period will be rejected as untimely unless the time limit is waived for good cause shown. (Id., ¶ 12). Informal grievance forms are available in the control rooms of all living units or from counselors and officers depending on where the inmate is housed. (Id., ¶¶ 13-14). If an inmate requires special assistance in filling out a grievance form, he may request assistance from his counselor or from another inmate. (Id., ¶ 15).

Once an inmate properly files an informal grievance, he is provided with a written response within 10 days. (Id., ¶ 16). Upon receipt of that response, if the inmate feels that his informal grievance is not resolved, he may pursue his complaint further through the formal grievance procedure. (Id., ¶ 17).  Specifically, the inmate may request a formal grievance form from his counselor, which he must complete and return within five calendar days of his receipt of the written resolution of his informal grievance. (Id., ¶ 19). In addition, there is an exception to the informal grievance requirement in situations where the inmate alleges physical abuse or excessive force by staff. (Id., ¶ 18). Specifically, when an inmate makes allegations of staff physical abuse or excessive use of force, the grievance is forwarded to the Grievance Coordinator and the inmate is issued a formal grievance form so that he may formally address his complaint if he wishes to do so. (Id.) Also, an information copy of the grievance is forwarded to DOC's internal investigations unit. (Id.) A properly filed formal grievance is responded to at the institutional level. (Id., ¶ 20). The formal

grievance is filed with the inmate's counselor, who prepares a report summarizing the facts of the complaint, along with his or her findings, and a recommendation that is forwarded to the Warden of the institution. (Id.) The Warden, in turn, provides a written response to the inmate, which states the reasons for the decision reached. (Id., ¶ 21). Upon receipt of the Warden's response, the inmate is advised of his right to appeal and may request a grievance appeal form. (Id.) The inmate may then appeal the Warden's decision to the Office of the Commissioner within five business days, which completes the grievance procedure. (Id., ¶ 24).

Importantly, however, the Warden's failure to provide a response does not amount to completion of the grievance procedure. Specifically, the entire formal grievance process must be completed within 30 calendar days from the date the formal grievance is filed with the inmate's counselor. (Id., ¶ 22). As a result, if the Warden's response time exceeds the 30 days, the inmate may go ahead and appeal the grievance to the Commissioner's Office absent a one time 10-day extension of time. (Id., ¶ 23). In either situation, an appeal completes the grievance procedure. (Id., ¶ 24).

Thus, to properly grieve an incident of alleged excessive force, Plaintiffs would have had to file a formal grievance and an appeal. An appeal would have had to be filed even if the Warden exceeded the 30-day response time in accordance with SOP IIB05-001 Section VI.A.11. (Doc. 71 Exhibit A Attach. 1).

Plaintiffs, however, contend that the only step required in order to exhaust administrative remedies regarding allegations of staff physical abuse is to file an informal grievance. Plaintiffs contend that the filing of an informal grievance automatically refers the issue to Internal Affairs for investigation, which then concludes the grievance procedure.

However, that interpretation is inapposite to a literal reading of the SOP, which clearly

provides for parallel, not substitute, resolution of staff violence through investigation by Internal Affairs. As summarized above, appeal of the denial of the grievance is required for complete exhaustion.

Plaintiffs also argue that they are entitled to "vicarious exhaustion" or "piggybacking," which is allowing the plaintiffs who did exhaust administrative remedies to bootstrap the plaintiffs who did not exhaust administrative remedies. The Eleventh Circuit has recognized the vicarious exhaustion policy in class action claims in *Chandler v. Crosby*, 379 F. 3d 1278 (11th Cir. 2004)("We hold that a class of prisoner-plaintiffs certified under Rule 23 (b)(2) satisfies the PLRA's administrative exhaustion requirement through "vicarious exhaustion," i.e., when "one or more class members has exhausted his administrative remedies with respect to each claim raised by the class."). The undersigned does not find this argument to be persuasive or appropriate as the *Chandler* holding regarding vicarious exhaustion was specifically limited to a class action. Plaintiffs requested class action certification, but their request was denied. (Doc. 68). (*See also Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), where, in a factually similar case in which counsel for Plaintiffs was involved, those Plaintiffs were held to the three step exhaustion process.).

Thus, it is necessary to examine the facts of exhaustion as to each Plaintiff individually.

*Plaintiff Keel*

Plaintiff Keel's alleged incident of excessive force occurred on August 2, 2006. He states that he filed an informal grievance on August 10, 2006, and another informal grievance on September 25, 2006.

Defendants have submitted evidence showing that Plaintiff Keel's grievance records reveal that he filed as many as seven informal and formal grievances, including two appeals, while incarcerated at VSP addressing a variety of issues, including a formal grievance alleging that he was

assaulted by correctional officers on August 2, 2006. (Doc. 71 Exhibit A Id., ¶¶ 26-27). Although Plaintiff Keel did not receive the Warden's response to his grievance within 30 days, he also did not seek to appeal the grievance after the 30-day time period had expired as provided for in the grievance procedure (Id.); see also *Turner*, 541 F.3d at 1084 (noting that Georgia inmates are required to file an appeal either within 5 days after receiving a written response to their formal grievance or within 30 days if they receive no written response in order to exhaust their administrative remedies under the PLRA). In addition, Plaintiff Keel subsequently dropped his grievance. (Doc. 71 Exhibit A, ¶ 27).

Plaintiff states that all he had to do in order to exhaust administrative remedies is to file an informal grievance, because the issue would then be referred to Internal Affairs, which is the final step. However, that directly contradicts the steps provided in the GDOC grievance procedure, as stated above.

Keel argues that he was warned not to report the alleged beatings, and therefore he was prevented from completing the required steps for exhaustion. However, Plaintiff Keel has failed to present any evidence that such was the case, or that he was in fact deterred from fully exhausting the grievance procedure. Thus, Plaintiff Keel's claims should be dismissed.

*Plaintiff Haskell*

Plaintiff Haskell alleges that he was assaulted on December 8, 2006, January 10, 2008, and March 5, 2008 . His grievance records show that he attempted to file more than 100 informal and formal grievances, including 25 appeals, while incarcerated at VSP addressing a variety of issues. (Doc. 71 Exhibit A, ¶ 29).

As an initial matter, Defendants concede that Plaintiff Haskell exhausted the allegations regarding the March 5, 2008 incident. However, they contend that Plaintiff Haskell did not exhaust

either the December 2006 or the January 2008 incident.

Although Haskell filed a formal grievance alleging that he was assaulted by correctional officers on January 10, 2008, he did not receive a formal response within 30 days and did not seek to appeal the grievance after the 30-day time period had expired as provided for in the grievance procedure. (Id., ¶ 31).

Additionally, Haskell's records show that, although he attempted to file an informal grievance on January 5, 2007, alleging that correctional officers assaulted him on December 8, 2006, his informal grievance was rejected as untimely because he did not file it within 10 days as required by the grievance procedure. (Id., ¶ 33).  Furthermore, Plaintiff Haskell's grievance records reveal that he did not file any grievances alleging that he was threatened or denied medical treatment following the alleged incident on January 10, 2008. (Id., ¶ 32).

Plaintiff states that he received threats, and thus was precluded from exhausting the grievance procedure.  Plaintiff further states that he repeatedly attempted to file grievances to unidentified officers every day he was in segregation, but his counselor denied receiving any.  (Doc. 85, p. 11).

Defendants contend that the claims regarding threats are conclusory, are not supported by any evidence, and are belied by the extensive use of the grievance procedure by this Plaintiff for these issues and other unrelated issues while at Valdosta State Prison.  Defendants contend that any order not to file grievances obviously did not work by Plaintiff Haskell's own admission that he repeatedly attempted to file grievances.  Thus, he was not deterred from exhaustion by threat of violence.

Moreover, Plaintiff Haskell does not allege any further attempts he made to exhaust once his grievance was denied for being filed out of time.  Therefore, Plaintiff Haskell's December 2006 and January 2008 claims should be dismissed for failure to exhaust, but his March 2008 claim should go forward.

*Plaintiff Greene*

Plaintiff Greene alleges that he was assaulted on November 14, 2007. Plaintiff Greene's grievance records show that, although he filed more than 10 informal and formal grievances, including 4 appeals, while incarcerated at VSP addressing various issues, he did not file any grievances alleging that he was assaulted by correctional officers or denied medical treatment on November 14, 2007. (Doc. 71 Exhibit A, ¶ 34).

Plaintiff states that he filed an informal grievance on the same day as the alleged assault, November 14, 2007. However, Plaintiff does not contend, nor does he provide any evidence, that he exhausted administrative remedies by filing an appeal or a formal grievance. Therefore, Plaintiff Greene has failed to exhaust.

*Plaintiff Hart*

Plaintiff Hart alleges that he was assaulted on June 26, 2007. Plaintiff Hart's grievance records reveal that he filed at least seven informal and formal grievances, including an appeal, while in GDOC's custody, including a formal grievance at VSP alleging that he was assaulted by correctional officers on June 26, 2007. (Doc. 71 Exhibit A, ¶ 35). Although Plaintiff Hart did not receive the Warden's response to his grievance within 30 days, he also did not seek to appeal the grievance after the 30-day time period had expired as provided for in the grievance procedure. (Id.). Additionally, Plaintiff Hart's records show that he did not file any grievances at VSP alleging that he was denied medical treatment following the alleged incident on June 26, 2007. (Doc. 71 Exhibit A, ¶ 36).

Plaintiff Hart has failed to exhaust administrative remedies, and therefore his claims should be dismissed.

*Plaintiff Walker*

Plaintiff Walker alleges that he was beaten on May 14, 2007, and was transferred to Telfair State Prison the next day on May 15, 2007. Plaintiff Walker states he filed a grievance on May 24, 2007 and again on July 11, 2007, and that his claims were investigated by internal affairs.

Plaintiff has submitted the Warden's response dated January 27, 2009, his acknowledgment on February 7, 2009, and his appeal on March 10, 2009. (Doc. 85 Exh. B).

Defendants do not contest exhaustion of administrative remedies relative to Plaintiff Walker.

**Statute of Limitations**

Defendants assert that several of the Plaintiffs' claims raised in the Second Amended Complaint were not filed within the applicable statute of limitations. In light of the Recommendations that the claims of Plaintiffs Keel, Hart, and Greene, as well as certain claims of Plaintiff Haskell, be dismissed based on a lack of exhaustion, the only claim at issue regarding the statute of limitations analysis is that of Plaintiff Walker. In his claim, Plaintiff Walker alleges that he was beaten on May 14, 2007 while housed at VSP. The statute of limitations for this Section 1983 claim is two years. *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003). Thus, Plaintiff Walker must have filed his claims herein before May 14, 2009 or properly tolled the two-year statute of limitations.

Defendants contend that, as it relates to the newly added Plaintiffs, their claims were filed on January 20, 2010 – the date that the Second Amended Complaint was filed. (Doc. 64). Thus, any claims must have accrued no earlier than January 20, 2008.

The five (5) new Plaintiffs argue that their Amended Complaint should "relate back" to either the filing of the original Complaint or the filing of their Motion to Join the Complaint. Plaintiffs filed their Motion to Join on July 24, 2008. (Doc. 27). That motion was granted on March 25, 2009

13

(Doc. 43).

Rule 15(c)(1) of the Federal Rules of Civil Procedure, which provides for the relation back of pleadings, is not intended to allow an amended pleading to add an entirely new claim based on a different set of facts. *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003). Here, the claims of Plaintiffs Keel, Walker, Haskell, Hart, and Greene do not arise out of the same occurrence or transaction. Rather, they raise new claims based on multiple sets of differing facts. Relation back does not apply. Additionally, relation back does not apply when a plaintiff seeks to add a potential defendant that was known to him before the statute of limitations expired. *Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998). Clearly, then, none of the new claims relate back to the date of filing of the original Complaint.

Defendants further contend that, to the extent that the Plaintiffs assert that the statute of limitations was tolled, neither the filing of Plaintiffs' Motion to Join or the filing of the original "class action" Complaint tolled the statute of limitations. Defendants contend that the question of whether the statute of limitations is tolled is a question of state law and that under Georgia law, the statute of limitations is not tolled by the filing of a motion to amend. *Geary v. City of Snellville*, 205 Fed. Appx. 761, 762 (11th Cir. 2006); *Doyle Dickerson Tile Co. v. King*, 210 Ga. App. 326, 327, 436 S.E.2d 63, 65 (1993). In *Doyle*, the Georgia Court of Appeals found that the statute of limitations was not tolled by the pendency of a motion to amend, noting that "[i]t was the duty of counsel to obtain a timely ruling on the motion to add defendants" and "[t]here is nothing in the record which indicates the trial court refused any request by counsel to enter an earlier ruling on the motion." Id.

In contrast, certain federal courts have concluded that the filing of a motion to amend before the expiration of the statute of limitations does toll the limitations period, reasoning that a party has

no control over when a court renders its decision regarding the proposed amendment. *See e.g., Moore v. State of Ind.*, 999 F.2d 1125, 1131 (7th Cir. 1993); *Bradley v. Armstrong Rubber Co.*, 46 F. Supp. 2d 583, 585-86 (S.D. Miss. 1999) (collecting cases).

Actions brought in a federal district court in Georgia pursuant to § 1983 are governed, in regard to the length of the limitations period, by the two-year statute of limitations period for personal injuries set forth in O.C.G.A. § 9-3-33. *Williams v. City of Atlanta,* 794 F.2d 624, 626 (11th Cir.1986). The Court notes that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). However, "[f]or § 1983 claims, we borrow not only the state's statute of limitations, but also its body of tolling rules unless it is inconsistent with the federal policy underlying the claim." *Thomas v. Lee*, 298 Fed.Appx. 906, 908 (11th Cir. 2008) (citing *Bd. Of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484-86 (1980); *Hawthorne v. Wells*, 761 F.2d 1514, 1515 (11th Cir. 1985)).

"Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983 - a void which is commonplace in federal statutory law. When such a void occurs, this Court has repeatedly 'borrowed' the state law of limitations governing an analogous cause of action." *Tomanio*, 446 U.S. at 484. "In enacting 42 U.S.C. § 1988 Congress determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law. Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. . . . 'In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application.' Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue."

*Hardin v. Straub*, 490 U.S. 536, 538 (1989) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 464 (1975)).

In regard to circumstances and questions as to whether the two-year statute of limitations governing § 1983 actions is tolled, the Eleventh Circuit has looked to state law. *See Geary,* 205 Fed. Appx. at 762 (Georgia renewal statute did not toll the time for plaintiff to file her § 1983 complaint, as under said renewal statute plaintiff's prior action was void due to lack of service and could not be looked to, under Georgia law, to renew plaintiff's current cause of action)*; Scott v. Muscogee County,* 949 F.2d 1122, 1123 (11th Cir.1992) (applying Georgia renewal statute to conclude that § 1983 action filed in federal court was time-barred);*Cambridge Mut. Fire Ins. Co. v. Claxton,* 720 F.2d 1230, 1233 (11th Cir.1983) (applying Georgia law to question of whether the statute of limitations period was tolled since the suit was filed in federal court based on diversity and therefore controlling substantive law of the state must be applied); *Aruanno v. Martin County Sheriff*, 343 Fed.Appx. 535 (11th Cir. 2009) (applying Florida law regarding tolling circumstances); *Thomas v. Lee*, 298 Fed.Appx. 906, 908 (11th Cir. 2008) (applying Georgia statute of limitations and accompanying body of tolling rules). Applying the Georgia rule that a motion to amend will not toll the statute of limitations to the facts herein, the filing of Plaintiffs' Motion to Join did not toll the two-year statute of limitations governing this cause of action.

For purposes of determining whether Plaintiff Walker's claim was filed within the two-year statute of limitations, and therefore satisfied the statute of limitations, the Court finds that, at the latest, Plaintiff Walker's claim was actually filed when Plaintiffs' Motion to Join was granted by Order of the Court dated March 25, 2009. Certain courts have held that claims in a motion to join or to amend are actually filed when the motion is filed. *Javier H. v. Garcia-Botello, et al.,* 239 F.R.D. 342 (W.D.N.Y. 2006)(date of filing of a motion to amend constitutes the date the action was

commenced as to newly added defendant); *Ramirez v. City of Wichita, Kansas*, 1994 WL 114295 (D.Kan.)(amended complaint was effectively filed when his motion for leave to file an amended complaint was filed).

Other courts, and specifically certain courts within this District, have found that the subject claims or amendment are not filed until the motion to join or amend is granted by the court, so that the actual date of filing is the date on which the court grants the motion to join or amend. *Williams v. Clinch County, Georgia*, 231 F.R.D. 700 (M.D.Ga. 2005)(HL) (proposed amended complaint was accepted as the operative complaint and the time period for defendants' response thereto was triggered when court entered order granting motion to amend); *Jackson v. Bluecross and Blueshield of Georgia, Inc.*, 2008 WL 4862686 (M.D.Ga.)(CDL)(when a state-court plaintiff files a motion to amend a complaint to assert federal subject matter jurisdiction, the removal period does not begin, and a defendant cannot remove the case, until the state court judge grants the motion to amend; until the motion to amend is granted, no basis for removal to Federal court exists); *Moore*, 999 F.2d at 1131 (7th Cir. 1993) (citing *Mayes v. AT & T Information Systems, Inc.*, 867 F.2d 1172 (8th Cir. 1989))(amended complaint not filed until the court rules on the motion to amend).

In accordance with the findings and conclusions of courts within this District, the Court finds that Plaintiff Walker's claims were filed on the date the Court granted Plaintiffs' Motion to Join, which was by Order dated March 25, 2009. Accordingly, Plaintiff Walker's claims were timely filed and satisfied the two-year statute of limitations. Therefore, it is the recommendation of the undersigned that Defendants' Motion to Dismiss Plaintiff Walkers' claim as time-barred be **DENIED,** and that Plaintiff Walkers' claim be allowed to proceed.

*Improper Joinder*

Defendants assert that Plaintiffs failed to comply with Rule 20 of the Federal Rules of Civil Procedure. Defendants contend that because Plaintiffs seek relief for separate and distinct incidents that involve different Defendants at different times, and therefore do not arise out of the same transaction or occurrence, joinder of their claims is improper, and seek dismissal accordingly.

The Federal Rules of Civil Procedure permit multiple plaintiffs to join in a single action only if they assert a right to relief jointly or severally, or if the right to relief arises out of the same transaction or occurrence and there is some question of law or fact that is common to all persons seeking to be joined. FED. R. CIV. P. 20 (a)(1). Rule 21 of the Federal Rules of Civil Procedure provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

The facts common to all are that each Plaintiff was an inmate at the time of the alleged incident, each claims to have been beaten while at VSP by some of the same Defendants, and some claim a subsequent denial of medical treatment. Each occurrence requires separate inquiries into the fact specific nature of the alleged incident under the Eighth Amendment.

Dismissal of this action is not an appropriate remedy for misjoinder. It may be appropriate at some time in the future to sever claims, especially if any of the claims proceed to trial; however, that decision, either on the Court's own volition or by motion, should not be made herein in the adjudication of the motion to dismiss.

### Failure to State a Claim

Defendants additionally assert that Plaintiffs have failed to state a claim against the supervisory Defendants in this action. Plaintiffs allege the existence of an alleged pattern and practice of beating restrained inmates at VSP, that Supervisory Defendants Hart and McLaughlin "condoned" such behavior, have been "deliberately indifferent" to the alleged beatings, and "covered up the pattern and practice of beatings of restrained inmates," and that Supervisory Defendants Donald, Jacobs, Lewis, Jones, and Draper have been deliberately indifferent and covered up the alleged beatings occurring at Georgia prisons, including VSP. (Doc. 64, ¶¶ 46, 50-55).

"Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. . . . The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. . . . The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (internal citations omitted).

To state a supervisory claim, a plaintiff must show the existence of a causal connection between the actions of the supervisor and the alleged constitutional deprivation by establishing: 1) a history of widespread abuse which put the supervisor on notice of the need to correct the alleged deprivation which he failed to correct, or 2) that the supervisor had a custom or policy that resulted in deliberate indifference to constitutional rights, or 3) facts which support an inference that the supervisor directed other defendants to act unlawfully or knew that other defendants would act unlawfully, and failed to stop them from doing so. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.

2003).

Although this issue had been addressed earlier in the litigation, Defendants assert that new case law requires a re-examination of the issue. Specifically, Defendants assert that the Supreme Court laid new ground regarding a plaintiff's pleading obligations.

A Complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6), if it does not "state a claim upon which relief can be granted." On a Motion to Dismiss Plaintiff is not entitled to the benefit of legal conclusions and other conclusory allegations in the complaint. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009) (explaining that "[a]lthough . . . [courts] must take all of the factual allegations in the complaint as true, [courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"*Iqbal*, 129 S.Ct. at 1950.

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "state a claim to relief that is plausible on its face." Id. at 1949-50 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing *Twombly,* 550 U.S. at 556). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. at 1949 (quotation marks and internal citations omitted) (quoting *Twombly,* 550 U.S. at 557). On

a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id* . at 1950-51.

In a factually similar case, the Supreme Court has expressly held that allegations that a defendant "knew of, condoned, and willfully and maliciously agreed" to commit an unconstitutional act are mere conclusions entitled to no presumption of truth. Id. at 1951. Moreover, the Court expressly rejected an argument advocating that a supervisor's mere knowledge of his subordinate's unconstitutional acts amounts to the supervisor's violation of the constitution. "It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." Id.

The Amended Complaint (Doc. 64) states that "...Defendant Warden Hart and Deputy Warden McLaughlin have condoned and have been deliberately indifferent to the beatings of Plaintiffs and similar situated inmates who have been beaten by Defendant CERT Team Officers and Lt. Maine in violation of the Constitution, laws and treaties and the Constitution and laws of Georgia." (Doc. 64, ¶ 46). "There is a pattern and practice of beating restrained inmates in Georgia prisons with over sixty cases involving inmate beatings of restrained inmates as summary punishment in the Georgia prisons have been filed in the United States District Courts in Georgia." (Doc. 64, ¶ 49). Plaintiffs then invite the court to take judicial notice of the "affidavits and depositions filed in the sixty such cases demonstrating the beatings of restrained inmates by CERT Team Officers as summary punishment at Georgia prisons."

> The Defendants Warden Hart and Deputy Warden McLaughlin who are directly responsible
> for the security and well being of inmates at the Valdosta State Prison have condoned and
> have been deliberately indifferent and are continuing to condone and be deliberately
> indifferent to the beatings of restrained inmates at Valdosta State Prison by CERT Team
> Officers which is a past and continuing pattern and practice of beating inmates by CERT

Team Officers and Captain Morris and Lt. Maine using beating gloves dealing out summary punishment to restrained inmates and Defendants Warden Hart, Deputy Warden McLaughlin and Lt. Maine have covered up the pattern and practice of beatings of restrained inmates by CERT Team Officers at Valdosta State Prison.

(Doc. 64, ¶ 50).

Plaintiffs contend that Defendant Commissioner Donald, as the ultimate decision maker of the Georgia Department of Corrections, has been deliberately indifferent and is continuing to be deliberately indifferent to the beatings of restrained inmates at Valdosta State Prison and elsewhere, and has been deliberately indifferent to cover up the pattern and practice of the alleged beatings. Plaintiffs allege that Defendant Jacobs as the ultimate decision maker for CERT Teams of the Georgia Department of Corrections, that Defendant Dr. Lewis as Medical Director of the Georgia Department of Corrections, that Defendant Jones as the Medical Director of Valdosta State Prison, and that Defendant Draper as the Director of Internal Affairs for the Georgia Department of Corrections, have all been deliberately indifferent and are continuing to be deliberately indifferent to the beatings of restrained inmates by CERT Team Officers at Valdosta State Prison and at other Georgia prisons which is a past and continuing pattern and practice of beating inmates by CERT Team Officers, and have "condoned and has been deliberately indifferent to the cover up of the pattern and practice of beating restrained inmates by CERT Team members at Valdosta State Prison and at other Georgia Prisons" and have failed to report said alleged beatings. (Doc. 64, ¶¶ 51-55).

The undersigned recognizes that these Plaintiffs are not proceeding *pro se*, but are instead represented by counsel, and consequently are not entitled to have their complaint liberally construed. *See Alba v. Montford,* 517 F.3d 1249, 1252 (11th Cir. 2008).

The undersigned finds that the allegations against the supervisory Defendants, as stated above, are purely conclusory in nature. Plaintiffs have not provided any factual allegations against these

Defendants, but instead name the Defendants by virtue of their job titles, as opposed to any factual explanation of their personal involvement in the alleged deprivations of the constitutional rights of the Plaintiffs. Plaintiffs have failed to plead factual content so that the court can draw the reasonable inference that these supervisory Defendants are liable for the misconduct alleged. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). Accordingly, Plaintiffs have failed to adequately state a claim against these Defendants. Accordingly, it is the RECOMMENDATION of the undersigned that the Complaint be dismissed as to Defendants Hart, McLaughlin, Donald, Jacobs, Lewis, Jones, and Draper.

### *Conclusion*

It is the RECOMMENDATION of the undersigned that Defendants' motions to dismiss be DENIED in part and GRANTED in part.[5] The undersigned RECOMMENDS that the claims made by Plaintiffs Keel, Hart, and Greene be DISMISSED for failure to exhaust, and that the 2006 and January 2008 claims by Defendant Haskell be DISMISSED for failure to exhaust; that Defendants Lucas, Proctor, Glynn, Jackson, Wadell, and B. Williams be DISMISSED, pursuant to the dismissal of claims brought by Plaintiffs Keel, Hart, and Greene; that Defendants Hart, McLaughlin, Donald, Jacobs, Lewis, Jones, and Draper be dismissed based on Plaintiffs' failure to adequately state claims of supervisory liability against these individuals; and that Defendant Cannon be dismissed as he is deceased.

In summary, the Plaintiffs that remain are Heng, Askew, Walker, and Haskell as to only his

---

[5]To the extent that Plaintiffs continue to argue issues relative to the Georgia Tort Claims Act and 18 U.S.C. § 2340, those claims have been dismissed and will not be further addressed herein. *See* Docs. 33, 42, and 49.

March 2008 claim.  Defendants that remain are Maine, Powers, Howell, Smith, Ratliff, Brown, Riddall, Yancey, and Schnake.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this recommendation.

**SO RECOMMENDED**, this 25th day of January, 2011.

s/ ***THOMAS Q.  LANGSTAFF***

UNITED STATES MAGISTRATE JUDGE

msd